# CHARLESTON.

COLUMBIA GAS & ELECTRIC CO. v. ALONZO MOORE.

Submitted October 16, 1917.    Decided October 23, 1917.

1. EQUITY—*Pleading—Pecuniary Evidence.*

    Generally, it is not necessary to exhibit documentary evidence with the pleadings in a suit in equity. (p. 167).

2. INJUNCTION—*Extraction of Gas—Allegations of Bill.*

    An owner of gas in a tract of land whose title is so clear, as a matter of law, as to preclude the necessity of resort to a jury trial for determination thereof, or his lessee, may enjoin the extraction of the gas, by one who has no right to it, and, if the bill sets out such a title, it need not allege pendency of an action at law to try the question of title, nor intention on the part of the plaintiff to institute such an action. (p. 168).

3. SAME—*Wrongful Extraction of Gas—Pleading.*

    An allegation of a bill filed for such purpose, that a deed upon which the plaintiff relies for title in himself conveys all the coal and other minerals in, under and upon the tract of land on which

the defendant is operating the well sought to be enjoined, is an allegation of the legal effect of the deed, not a statement of the terms thereof, and asserts a conveyance of absolute title to the gas. (p. 168).

4. SAME—*Title to Maintain Suit.*

Applicability of the rule or principle that a question of title to real estate, proper for jury inquiry and determination, cannot be tried and determined in a suit in equity to enjoin a trespass upon the land in question, need not be disclosed by the bill, nor can the rule always be invoked by a demurrer. Such defense may be disclosed by an answer and it defeats the jurisdiction in equity, as to the title, at whatever stage of the suit it appears. (p. 169).

5. APPEAL AND ERROR—*Judicial Discretion—Injunction.*

If the defendant in a bill to enjoin a trespass to real estate, upon which such an injunction has been awarded, without proof of the allegations of the bill and without notice of the application to the defendant, instead of moving a dissolution of the injunction for alleged defectiveness of the bill or on an answer denying the allegations, has demurred to the bill and procured an erroneous dismissal thereof, the appellate court, on the reversal of the decree, will not enter upon an inquiry as to whether the award of the injunction was, under the circumstances, the exercise of a sound judicial discretion, for the trial court has had no fair opportunity to pass upon the question. (p. 170).

Appeal from Circuit Court, Lincoln County.

Bill by the Columbia Gas & Electric Company against Alonzo Moore. Demurrer to bill sustained, and bill dismissed, and plaintiff appeals.

*Decree reversed, and cause remanded.*

*Enslow, Fitzpatrick & Baker, F. L. Thomas* and *R. G. Altizer,* for appellant.

*Pendleton L. Williams* and *Jacob D. Smith,* for appellee.

POFFENBARGER, JUDGE:

The intrusive character of the wrongful removal of natural gas from land and the essential elements of a bill in equity to enjoin the same, as a trespass working irreparable injury, are the subjects of the inquiries raised by this appeal from a decree sustaining a demurrer to the plaintiff's bill and dismissing it.

The gas well the operation of which the plaintiff seeks to inhibit was drilled by the defendant, Moore, on Lots Nos. 14 and 15 of the Caldwell addition to the town of Branchland, in Lincoln County, which was formed out of an eight acre tract of land, known as Lot No. 9 of the Sherrod Adkins 80 acre tract. The theory of the bill is that the lots on which the well is located are portions of a very large area throughout which the lessors of the plaintiff obtained all the minerals underlying the same, by conveyances antedating the title of the defendant, which the bill asserts is limited to the surface of the two lots. For the lessors, Sabin W. Colton, Jr. and George L. Estabrook, Trustees, the bill deraigns two titles from the Commonwealth of Virginia, one for 100,000 acres, more or less, commencing with patents issued to Samuel Smith, for four tracts of land having an aggregate area of about 250,000 acres, out of which a tract of 30,720 acres, being part of a 100,000 acre portion of these grants, lying east of the Guyandotte River and in the counties of Cabell, Lincoln and Putman, was leased to Otto and E. G. Germer, assignors of F. B. Enslow, Trustee, the assignor of the plaintiff, the Columbia Gas and Electric Co.; and the other, from junior patents under which John G. Adkins claimed the title to a tract of 165 acres, lying within the 100,000 acre tract and the 30,720 acres leased as aforesaid, the coal and other minerals in, under and upon which, Adkins conveyed to E. M. Gregory, Trustee. These mineral interests Gregory conveyed to the Cincinnati Coal Mining Co., and, afterwards, they were sold at a judicial sale, under proceedings against the Cincinnati Coal Mining Co., and purchased by Henry McFarland, a trustee for the Guyandotte Land Company whose title was acquired by Colton and Estabrook, the lessors aforesaid. The deed by which John G. Adkins severed the minerals from the surface of the 165 acre tract of land, bears date, November 25, 1850. Afterwards, by a deed dated, April 15, 1851, he conveyed the surface of said tract to Henry J. Samuels and Jerome Shelton, Trustees, and they sold and conveyed it to Jacob Adkins, by a deed dated, July 12, 1852, subject to a reservation of all the coal or other minerals in, under and upon said tract, as set out in the deed from John

G. Adkins to E. M. Gregory. After the death of Jacob Adkins, his executor, by a deed dated, September 14, 1870, conveyed this tract to Abigail Adkins. By a deed dated, December 11, 1877, she and her husband conveyed a part thereof to Basil Adkins and Jerome Adkins. This conveyance included the land involved in this controversy and contained about 80 acres. It was partitioned in a suit brought for the purpose, in 1895, and lot No. 9 thereof conveyed to James Franklin who later conveyed it to J. H. McComas. He conveyed it, together with lot No. 10, to one Strause of Richmond, Virginia. Strause conveyed it to J. L. Caldwell, who subdivided a portion of it into town lots and conveyed two of them, 14 and 15, to T. A. Null. Null conveyed them to J. L. Midkiff and Midkiff, to the defendant.

Having thus narrated minutely and in detail the history of the lessors' title to the oil and gas under the lot on which the well in question is, and that of the defendant to the surface thereof, the bill alleges and charges "That all the gas rights and right to remove the said gas under the said tract of land claimed by Alonzo Moore is vested in it," and that he, by virtue of the deed under which he claims, is entitled only to the surface. Thus denying any right in him to the gas under the lot, it further charges that he, not regarding the rights of the plaintiff, has without its consent, drilled, or caused to be drilled, a well on the lot in question and is using the gas therefrom.

To sustain the action of the court upon the demurrer, the appellee relies upon three grounds: (1), failure of the plaintiff to attach to its bill the exhibits therein referred to; (2), inappropriateness of the remedy invoked; and, (3), lack of such title as a plaintiff must have to enable him to maintain a suit of this kind, apparent on the face of the bill.

As a matter of convenience, documents relied upon as evidence to prove the allegations of a bill in equity are usually filed therewith, as exhibits, but it is not necessary so to file them. A bill alleging sufficient matters of fact to afford ground for the relief asked, is proof against a demurrer, even though no evidence is exhibited with it. Since the demurrer admits the facts alleged, proof thereof is unnecessary. It

becomes necessary only when the allegations of fact are put in issue by an answer denying them. Obviously, therefore, a plaintiff may exhibit his proof with the bill, if it is documentary, or put it in evidence otherwise, after an issue has been made. *Sult* v. *Hochstetter Oil Co.*, 63 W. Va., 317. This bill, however, does not purport to file the deeds relied upon as exhibits. It describes them, sets forth their legal effect and avers that they will be produced and filed as parts thereof.

If the allegations of the bill eliminate all issues of fact proper for jury inquiry and determination and set up a clear, complete and sound title in the plaintiff, not dependent in any way upon such issues of fact, it makes out a case for relief by injunction against irreparable injury, notwithstanding necessity for judicial determination of questions of law, arising upon the documentary evidence. *Myers* v. *Bland*, 87 S. E. 969; *Ephraim Creek Coal & Coke Co.* v. *Bragg*, 75 W. Va. 70; *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317. In such cases, there is no occasion for resort to an action of ejectment, wherefore the bill need not aver pendency thereof or intention to institute one.

This bill alleges a common source of title for the defendant and the plaintiff's lessors and a severance of that title as to the minerals. It says Adkins, having the complete title to the tract of land, executed a deed conveying the minerals therein to Gregory and retained the surface. By subsequent conveyances, the title to the minerals became vested in the lessors of the plaintiff and the title to the surface in the defendant. These allegations, if true, and the demurrer admits them to be true, exclude all questions of conflict of boundary and adverse title, and bring the case within the principle just stated. As the deed under which the defendant claims, bears date, June 30, 1914, it is impossible for him to have acquired title to the gas, as distinguished from the surface, by adverse possession. The bill says he acquired his title to the surface, June 30, 1914, and that he has either drilled a well on the lot or caused it to be drilled. If the gas was severed in title from the surface, the possession of the latter by the defendant's predecessors in title was not possesion of the gas. *Wallace* v. *Elm Grove Coal Co.*, 58 W. Va. 449. He cannot

have had possession of the gas, by means of the well in question, for the statutory period of ten years, for it must have been drilled since June 30, 1914.

The terms of the allegation of severance of the minerals from the surface, by the Adkins deed of November 25, 1850, are relied upon for the contention that the bill sets up only an uncertain title in the plaintiff's lessors. The allegation is that the deed conveyed all the coal and other minerals in, under and upon the tract of land. It does not purport to set forth the terms of the deed. It charges that the deed conveyed all the coal and other minerals in the tract of land, not that it conveyed in the language or terms of the bill. Of course, a demurrer admits only such matters as are well pleaded, *Hays* v. *Heatherly*, 36 W. Va. 613, 618, and, if the allegation just referred to could be regarded as one stating the terms of the conveyance and not averring the legal effect thereof, it would set up a mere *prima facie*, not conclusive, title to the gas in the plaintiff's lessors, and the subsequent allegation of absolute title thereto in them, might be treated as a conclusion not warranted by the terms of the deed. A grant or reservation in general terms, of all the minerals in a tract of land, *prima facie*, includes the oil and gas as well as the solid minerals, such as coal, but it is sometimes susceptible of an interpretation that excludes them. *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317; *Gaffney* v. *Stowers*, 73 W. Va. 420. Since it does not purport to give the terms of the deed, the allegation in question must be deemed one charging the legal effect thereof and asserting absolute title to the minerals in the tract of land. When the deed is produced, either to prove the allegation or to support an answer denying it, a wholly different status of the case may be established.

Application of the defensive principle relied upon need not appear from the bill, nor can it always be invoked by a demurrer. The test is necessity or lack of necessity of a jury trial. Such necessity defeats the jurisdiction in equity for determination of the question of title, at whatever stage of the equity suit it may appear. If it exists and is not disclosed by the bill, the answer or a plea may show it. When the deed

in question is produced, its terms may conclusively sustain the allegation of the bill, and thus preclude right in the defendant to go to a jury. If they do not, and the situation confers such right, a motion to dissolve the injunction, supported by an answer exhibiting the deed, will bring it to the attention of the court. Since the deed was not produced in the court below and is not in this record, it is impossible now to say what its construction or legal effect is.

The defensive procedure adopted absolves this court from duty to inquire whether the award of a preliminary injunction stopping the operation of a producing gas well, without proof of the allegations of the bill and without notice to the defendant of the application, affording him an opportunity to resist it, was the exercise of sound judicial discretion. Instead of moving a dissolution of the injunction, for defectiveness of the bill, or, on the filing of an answer denying its allegations, the defendant, by a demurrer, attacked the bill itself, and the trial court has had no opportunity to pass upon the sufficiency of grounds that might have been urged for dissolution of the injunction, treated as one awarded on a sufficient bill.

The principles and conclusions here stated necessitate reversal of the decree complained of, overruling of the demurrer, reinstatement of the injunction and remand of the cause to the trial court.

*Decree reversed, and cause remanded.*